## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> YALE UNIVERSITY, <br><br> Defendant. | Civil Action No. 3:21-cv-00241-KAD |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY PROCEEDINGS

Christopher F. Droney (ct00020)
Erick M. Sandler (ct25029)
Sara J. van Vliet (ct30690)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT  06103
Telephone: (860) 275-0100
Fax: (860) 967-0793
cdroney@daypitney.com
emsandler@daypitney.com
svanvliet@daypitney.com

Neal Kumar Katyal (phv10947)
Peter S. Spivack (phv10936)
Toccara Nelson (phv20026)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004
Telephone: (202) 637-5600
Fax: (202) 637-5910
neal.katyal@hoganlovells.com
peter.spivack@hoganlovells.com
toccara.nelson@hoganlovells.com

Sundeep Iyer (phv10960)
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
Fax: (212) 918-3100
sundeep.iyer@hoganlovells.com

*Counsel for Defendant Yale University*

## INTRODUCTION

Defendant Yale University moves this Court to stay proceedings in this case.  The same day that Plaintiff Students for Fair Admissions, Inc. ("SFFA") filed this lawsuit challenging Yale University's undergraduate admissions process under Title VI of the Civil Rights Act of 1964, SFFA filed a petition for certiorari in the Supreme Court in a case challenging Harvard University's undergraduate admissions process under Title VI, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, No. 20-1199 (U.S.) ("*Harvard*").  SFFA's petition in the *Harvard* case asks the Supreme Court to overturn decades of precedent regarding race-conscious college admissions, and to hold that colleges and universities may never consider an applicant's race or ethnicity as a factor in a holistic admissions process.  In the alternative, SFFA asks the Supreme Court to declare Harvard's holistic admissions process unlawful.

The Supreme Court will likely act on SFFA's petition for certiorari in June 2021, before the Supreme Court's summer recess.  If the Supreme Court grants the petition in the *Harvard* case, its decision on the merits may alter the law governing the consideration of race in admissions and would therefore directly affect the outcome of this lawsuit.  Yale does not believe a change to the legal standard governing the use of race in university admissions is warranted.  But a Supreme Court decision in the *Harvard* case that overturns current law could require Yale to revise its undergraduate admissions process.  Alternatively, the Supreme Court could issue a decision that reaffirms existing precedent and rejects SFFA's claims in the *Harvard* litigation.  Such a decision would likely warrant the dismissal of this case as a matter of law.

Either way, the Court and the parties should not forge ahead with this lawsuit before the Supreme Court acts on SFFA's petition in the *Harvard* litigation.  Yale's motion to dismiss this lawsuit is currently due on June 14, 2021.  But it makes little sense for the parties to litigate—and

this Court to decide—that motion to dismiss now if the Supreme Court may soon clarify or alter the law governing race-conscious college admissions. Moreover, if SFFA's lawsuit against Yale survives a motion to dismiss, the case may involve protracted and costly discovery, and will impose burdens on the college's administrators and faculty. Those costs and burdens could prove unnecessary depending on the Supreme Court's disposition of the *Harvard* case. At a minimum, because any decision the Supreme Court issues is likely to affect the scope of discovery in this case, the parties should not begin discovery until the Supreme Court resolves the *Harvard* case. These commonsense considerations led SFFA to agree to a stay of its own lawsuit challenging the admissions practices of the University of North Carolina while the Supreme Court was evaluating *Fisher v. University of Texas at Austin*, 136 S. Ct. 2198 (2016). A similar stay is appropriate here.

This Court should therefore grant this motion and stay all proceedings in this case pending the resolution of SFFA's petition for certiorari in the *Harvard* litigation. If the Supreme Court denies the petition for certiorari, Yale requests that it be afforded 30 days after the petition is denied to respond to SFFA's Complaint and to meet and confer with SFFA pursuant to Federal Rule of Civil Procedure 26(f). Alternatively, if the Supreme Court grants the petition, this Court should extend the stay until after the Supreme Court issues its decision on the merits in the *Harvard* case.

Counsel for Yale reached out to counsel for SFFA regarding its position on this motion. Counsel for SFFA indicated that SFFA declines to state a position on the motion at this time.

## BACKGROUND

Plaintiff Students for Fair Admissions, Inc. is an organization that opposes the consideration of race in university admissions. *See* Compl. ¶ 4. Its Complaint in this case alleges that Yale's holistic undergraduate admissions process discriminates against Asian-American applicants and violates Title VI of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000d *et seq.*

2

Much of SFFA's Complaint is copied word-for-word from a prior complaint filed by the United States against Yale in this Court in October 2020.  *See* United States Compl., *United States v. Yale Univ.*, 3:20-cv-01534-CSH (D. Conn., Oct. 8, 2020), ECF 1 ("*Yale I*").  Shortly after the Government filed its lawsuit, SFFA moved to intervene as a plaintiff alongside the Government.  The proposed complaint SFFA filed in support of its intervention motion is nearly identical to the Complaint SFFA has filed in this case.  *See* SFFA Proposed Compl., *Yale I*, 3:20-cv-01534-CSH (Oct. 27, 2020), ECF 5-2.  This Court denied SFFA's motion to intervene.  *See United States v. Yale Univ.*, 337 F.R.D. 35, 47 (D. Conn. 2021) (Haight, J.).  The United States subsequently voluntarily dismissed its lawsuit against Yale in February 2021.  *See* Notice of Voluntary Dismissal, *Yale I*, 3:20-cv-01534-CSH (Feb. 3, 2021), ECF 50.  When it dismissed its lawsuit, the Department of Justice stated that it would continue its investigation of Yale's admissions process.

SFFA's lawsuit against Yale also echoes its similar lawsuit against Harvard.  In 2014, SFFA sued Harvard, alleging that Harvard's undergraduate admissions process discriminated against Asian-American applicants and violated Title VI.  After five years of litigation and a bench trial, a district court found that Harvard's holistic admissions process was lawful.  *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 397 F. Supp. 3d 126, 197-204 (D. Mass. 2019).  The First Circuit affirmed on appeal.  *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 980 F.3d 157 (1st Cir. 2020).

On the same day it filed its lawsuit against Yale, SFFA filed a petition for certiorari in *Harvard*.  The first question presented in the petition for certiorari asks the Supreme Court to "overrule *Grutter v. Bollinger*, 539 U.S. 306 (2003), and hold that institutions of higher education cannot use race as a factor in admissions."  Petition for Writ of Certiorari at i., *SFFA v. Harvard*, No. 20-1199 (U.S. Feb. 25, 2021) ("Pet.").  The second question presented asks the Court to hold

that "Harvard violat[ed] Title VI by penalizing Asian-American applicants, engaging in racial balancing, overemphasizing race, and rejecting workable race-neutral alternatives." *Id.*

## ARGUMENT

This Court should stay this case pending the Supreme Court's resolution of *Harvard*. The Supreme Court may grant certiorari in *Harvard* and issue a decision that substantially alters the law governing SFFA's claims against Yale. Rather than require the parties and this Court to incur the expense of unnecessary litigation, this Court should stay proceedings until the Supreme Court has either denied certiorari or issued a decision in the *Harvard* litigation. A stay is well within the Court's discretionary authority, has often been employed by district courts in this Circuit when a pending case in the Supreme Court may decide relevant legal issues, and was recently employed by district courts in two cases that SFFA brought against other universities in similar circumstances. The same course is warranted here.

### A.    This Court Has Broad Authority to Stay the Proceedings in This Case.

This Court has "broad discretion to stay proceedings." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012). "Especially in cases of extraordinary public moment," the plaintiff and the defendant "may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Jones*, 520 U.S. at 707 (quoting *Landis*, 299 U.S. at 256).

In determining whether to grant a stay, district courts in this Circuit consider five factors: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as

balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Acton v. Intell. Cap. Mgmt., Inc.*, No. 15-CV-4004(JS)(ARL), 2015 WL 9462110, at \*2 (E.D.N.Y. Dec. 28, 2015); *see Bridgeport Harbour Place I, LLC v. Ganim*, 269 F. Supp. 2d 6, 8 (D. Conn. 2002) (noting that this standard "balance[s] the interests of the litigants, nonparties, the public, and the court," and granting stay); *Catskill Mtns. Chapter of Trout Unlimited, Inc. v. U.S. EPA*, 630 F. Supp. 2d 295, 304 (S.D.N.Y. 2009) (applying this standard and granting litigant's request for a stay).

A stay is particularly warranted where "it would be an inefficient use of time and resources of the court and the parties to proceed in light of a pending U.S. Supreme Court decision, particularly where that decision may not settle every question of fact and law before this Court, but in all likelihood it will settle many and simplify them all." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012) (internal quotation marks omitted); *see, e.g.*, *Marshel v. AFW Fabric Corp.*, 552 F.2d 471, 472 (2d Cir. 1977) (per curiam) (directing district court to stay proceedings when the case "will, in all likelihood, turn upon" a pending Supreme Court decision); *Hickey v. Baxter*, 833 F.2d 1005, 1005 (4th Cir. 1987) (per curiam) (unpublished table decision) ("[T]he district court acted within its discretion in staying proceedings while awaiting guidance from the Supreme Court in a case that could decide relevant issues.").

Thus, district courts in this Circuit routinely stay litigation pending the Supreme Court's resolution of a case that may resolve a controlling question of law or a relevant legal issue that may affect the disposition of the litigation. *See, e.g.*, *Loftus v. Signpost Inc.*, 464 F. Supp. 3d 524, 527 (S.D.N.Y. 2020); *Sikhs for Just.*, 893 F. Supp. 2d at 622; *In re Literary Works in Elec. Databases Copyright Litig.*, Nos. M-21-90 GBD, MDL 1379, 00 CIV 6049, 00 CIV 7376, 00 CIV

9411, 2001 WL 204212, at *3 (S.D.N.Y. Mar. 1, 2001); *Jugmohan v. Zola*, No. 98 Civ. 1509 (DAB), 2000 WL 222186, at *5 (S.D.N.Y. Feb. 25, 2000) ("Postponing the final disposition of a case pending an upcoming decision by the United States Supreme Court is a practice exercised by the Second Circuit in the interest of judicial economy."); *United States v. Town of Oyster Bay*, 66 F. Supp. 3d 285, 290 (E.D.N.Y. 2014) ("Where a pending Supreme Court or an appellate court decision would be dispositive of the litigation, [district] courts have found the above factors to weigh in favor of staying proceedings.").

Indeed, district courts in this Circuit and others routinely grant stays not only when the Supreme Court has already granted certiorari in a pending case, but also when a petition for certiorari is still pending before the Court. *See, e.g.*, *Whitley v. United States*, No. 16 Civ. 3548 (NRB), 2020 WL 1940897, at *3 (S.D.N.Y. Apr. 22, 2020) ("The Court nevertheless granted Whitley's request to continue to hold his case in abeyance pending the exhaustion of direct review of [other] cases in the Supreme Court."); *Jones v. Heath*, No. 10 Civ. 8644 (RJS)(FM), 2012 WL 2673649, at *1 (S.D.N.Y. July 5, 2012) (noting that the court "adjourned Respondents' time to answer" until "the Supreme Court had fully resolved its decision on whether to grant a writ of certiorari" in another case); *see also Ocwen Loan Servicing, LLC v. SFR Invs. Pool I, LLC*, No. 2:17-CV-00279-JAD-GWF, 2017 WL 5068520, at *2 (D. Nev. Apr. 11, 2017) ("Staying this case pending the Supreme Court's disposition of the petitions for certiorari in *Bourne Valley* and *Saticoy Bay* will permit the parties to evaluate—and me to consider—the viability of the claims under the most complete precedent."); *Pac. Bell Tel. Co. v. PUC of Cal.*, No. C 03-1850 SI, 2004 WL 2713063, at *1 (N.D. Cal. Sep. 1, 2004) (continuing an existing stay pending a decision by the Supreme Court on a pending petition for certiorari).

**B.      This Case Satisfies the Criteria for a Stay.**

Consistent with the practice of district courts in this Circuit and others, this Court should grant a stay in this case pending the Supreme Court's disposition of SFFA's petition for certiorari in the *Harvard* litigation.   Indeed, in SFFA's lawsuits challenging the undergraduate admissions process at Harvard and the University of North Carolina, the district courts stayed the litigation pending the Supreme Court's resolution of *Fisher v. University of Texas at Austin*, 136 S. Ct. 2198 (2016) ("*Fisher II*")—over SFFA's objection in the former case, and with SFFA's consent in the latter.  *See* Order, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, No. 1:14-cv-14176-ADB (D. Mass. Oct. 9, 2015), ECF 110; Order, *Students for Fair Admissions Inc. v. Univ. of N.C.*, No. 1:14-cv-00954-LCB-JLW (M.D.N.C. Oct. 1, 2015), ECF 65.[1]  A stay is equally appropriate here.  All the relevant factors—the interests of the plaintiff, the interests of the defendant, judicial economy and convenience, and the public interest— support a stay of this case.

*First*, SFFA's interests are unlikely to be materially prejudiced by a stay.  *Ganim*, 269 F. Supp. 2d at 8-9 (evaluating whether a stay would "overly burden the plaintiffs").

To start, any delay may be relatively short and is unlikely to burden SFFA.  Harvard's brief in opposition to certiorari is due on May 17, 2021.  *See SFFA v. Harvard*, No. 20-1199 (U.S. Mar 4, 2021) (granting extension of time for Harvard's brief to May 17).  And the case is likely to be

---

[1] In both of those cases, discovery had already begun.  The district court generally stayed discovery, but directed the parties to complete some outstanding discovery.  *See* Stay Order at 3, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, No. 1:14-cv-14176-ADB (D. Mass., Mar. 11, 2016), ECF 146 ("During the *Fisher* stay, the parties generally shall not be required to search or produce large quantities of electronically stored information, such as email files.");  Order at 1, *Students for Fair Admissions Inc. v. Univ. of N.C.*, No. 1:14-cv-00954-LCB-JLW (M.D.N.C., Oct. 1, 2015), ECF 65.  Because discovery has not even begun in this case, a stay of all proceedings is even more appropriate here.  It would make little sense to start the discovery process from scratch, including drafting agreements and protocols to protect the privacy of Yale's applicants and students, while the *Harvard* case remains pending.

7

distributed for discussion at the Justices' June 17, 2021 conference. *See* S. Ct. R. 15.5; Case Distribution Schedule—October Term 2020 at 6, U.S. Supreme Court, https://www.supremecourt. gov/casedistribution/casedistributionschedule2020.pdf (last visited May 7, 2021). It is therefore likely that the Supreme Court will act on SFFA's petition for certiorari before the Supreme Court's summer recess begins at the end of June.[2] If the Supreme Court denies review in June, Yale could file its motion to dismiss 30 days later. That would mean a delay of just over a month, as Yale's current deadline for its motion to dismiss is June 14, 2021. That short delay would cause no harm to SFFA, particularly in light of the fact that this case is still in its early stages. *See In re Literary Works*, 2001 WL 204212, at \*3 ("[A] stay of several months will cause no prejudice or hardship.").

But even if the Supreme Court grants SFFA's petition in *Harvard*, the Court will issue its decision within a year—likely no later than June 2022. And that delay is unlikely to prejudice SFFA. In fact, if anything, SFFA may stand to benefit from that delay. Parts of SFFA's Complaint in this case are squarely foreclosed by the Supreme Court's decision in *Grutter*. *Compare* Compl. ¶¶ 251-265 (alleging that any use of race in admissions violates Title VI) *with Grutter v. Bollinger*, 539 U.S. 306, 334 (2003) (holding that a race-conscious admissions program is narrowly tailored and lawful where race is "used in a flexible, nonmechanical way"). SFFA can only prevail on those claims—and its associated request for equitable relief—if the Court grants its petition in *Harvard* and overrules *Grutter*. SFFA would likewise benefit from a delay if the Court declines to overrule *Grutter* but nonetheless finds that Harvard's admissions process violates Title VI. To be sure, Harvard and Yale's admissions processes are not the same, and a decision holding that Harvard's admissions process violates Title VI would not necessarily require the same result with

---

[2] Indeed, *Fisher II* followed a similar path. The parties completed briefing in May 2015, and the Supreme Court granted the petition before its summer recess in June 2015. *See Fisher v. Univ. of Tex. at Austin*, 576 U.S. 1054 (2015) (granting certiorari).

respect to Yale.  Even so, if the Supreme Court holds that Harvard's admissions process is unlawful, Yale and other colleges and universities may need to modify their own admissions processes to comply with any change in the governing law.  That development could resolve this litigation, as Yale may alter the aspects of its admissions process that SFFA is challenging.  Thus, the fact that SFFA's claims against Yale "will, in all likelihood, turn upon the decision in" *Harvard* strongly militates in favor of a stay.  *Marshel*, 552 F.2d at 472.

SFFA also cannot claim that it would be materially prejudiced by a stay pending the resolution of another case that SFFA itself has filed, and one that is inextricably linked with this case.  SFFA's petition for certiorari was filed by the same counsel that represents SFFA here and was filed on the same day as the Complaint in this case.  Indeed, this case and the *Harvard* litigation are both part of SFFA's multi-front attack on the current legal standards that govern the consideration of race in university admissions.  *See* Pet. at 20, 35, *SFFA v. Harvard*, No. 20-1199 (arguing that "*Grutter*'s core holding—that universities can use race in admissions to pursue student-body diversity—is plainly wrong," and that "overturning *Grutter* will mean that universities can no longer use race in admissions").  Because SFFA's petition for certiorari seeks to change the law that applies not just in *Harvard*, but in this case as well, SFFA will not be prejudiced by a short stay that will allow the parties and the Court to ascertain what law will apply.

SFFA's own delays in litigating this case also show that it does not have a strong interest "in an expeditious resolution" of this lawsuit.  *Ganim*, 269 F. Supp. 2d at 8.  SFFA claimed it would promptly file its own lawsuit in the event its motion to intervene in the Government's lawsuit against Yale was denied.  *See* Reply in Support of Mot. to Intervene at 8, *Yale I*, No. 3:20-cv-01534-CSH (Dec. 7, 2020), ECF 40.  But after its motion to intervene was denied in late January 2021, SFFA waited over five weeks to file a Complaint it largely copied word-for-word from the

Government's Complaint.  Indeed, even after the Government dismissed its lawsuit against Yale on February 3, 2021, SFFA waited almost a month to file its Complaint.  Then, SFFA waited until April 15, 2021—*seven weeks* after filing its Complaint—to request Yale's waiver of service of the Complaint.[3]  It is also telling that SFFA filed its lawsuit challenging Harvard's admissions program in 2014, but waited *seven years*—until it could ride the Government's coattails by filing a Complaint largely copied verbatim from the Government's Complaint—to bring a similar challenge against Yale.  SFFA's unhurried approach to this litigation undermines any claim that it would be materially prejudiced by a stay.

*Second*, "the interests of and burdens on the defendant[]" likewise support a stay.  *Ganim*, 269 F. Supp. 2d at 8.  It would be unduly burdensome to require Yale to incur the considerable costs of litigating this dispute only to have the Supreme Court grant certiorari and issue a decision in *Harvard* that upends the litigation.  The Supreme Court could grant certiorari and overrule *Grutter* or substantially alter the existing legal regime, requiring Yale to modify its undergraduate admissions process and thereby potentially mooting SFFA's claims for forward-looking declaratory and injunctive relief.  Alternatively, the Supreme Court could grant certiorari and issue a decision that rejects SFFA's claims in the *Harvard* litigation, potentially warranting the dismissal of this case as a matter of law.  Either way, if a stay is not granted, Yale will be forced to spend considerable resources litigating a case whose complexion may change substantially depending on how the Supreme Court resolves the *Harvard* case.

---

[3] SFFA's months-long delay in filing this lawsuit also strongly suggests that the lone student whose interests SFFA represents here—an individual who was "denied admission to Yale's 2020 entering class" and who is allegedly "ready and able to apply to transfer to Yale when it stops discriminating against applicants on the basis of race and ethnicity"—will not be prejudiced by a stay.  Complaint ¶¶ 6, 8.  Indeed, even absent a stay, that student will likely become ineligible to transfer to Yale long before this litigation comes to a close.  *See Transfer Eligibility & Academics Guidelines*, Yale Univ., https://admissions.yale.edu/transfer-details (last visited May 7, 2021) (noting that an applicant cannot transfer after completing two years of undergraduate education elsewhere).

For one thing, it would make little sense for Yale to be forced to spend time and money litigating a motion to dismiss when the Supreme Court may alter the law governing the consideration of race in university admissions. *See, e.g.*, *In re Literary Works*, 2001 WL 204212, at *3 (noting that "[i]t would be an inefficient use of time and resources of the court and the parties to proceed in light of a pending U.S. Supreme Court decision that all agree will significantly impact" the litigation). If the Supreme Court alters the applicable legal standard, any decision this Court issues in the interim regarding a motion to dismiss may be short-lived.

It would also be wasteful for Yale to be required to respond to discovery while *Harvard* remains pending in the Supreme Court. If the Supreme Court alters the legal standard governing the consideration of race in university admissions and Yale must change its admissions practices, any discovery SFFA obtains now with respect to Yale's existing admissions process will be rendered largely irrelevant, as SFFA's claims challenging Yale's existing admissions process would likely become moot. Indeed, even if the Supreme Court does not overrule *Grutter* and instead clarifies how courts should evaluate a race-conscious admissions program under the existing legal standard, the scope of fact and expert discovery will change. For example, if the Supreme Court discusses which facts are relevant in determining whether a university's goals in obtaining "the educational benefits of diversity" are "sufficiently measurable," the Court's opinion will shape the type of discovery SFFA will seek regarding Yale's interest in achieving a diverse student body. *Fisher II*, 136 S. Ct. at 2211. Similarly, if the Supreme Court opines on which facts are relevant in determining whether there are "workable" race-neutral alternatives, that, too, would shape SFFA's discovery. *Id.* at 2212. In short, it would be wasteful for the parties to proceed to discovery while *Harvard* remains pending before the Supreme Court.

11

The burdens of proceeding with discovery while the *Harvard* case remains pending are particularly acute in light of the sweeping discovery SFFA is likely to seek.  At the hearing on its motion to intervene in the Government's lawsuit against Yale, SFFA itself promised that "there would be extensive discovery if [SFFA] filed [its] own lawsuit against Yale."  *Yale Univ.*, 337 F.R.D. at 45.  The costs and burdens of discovery also would not be meaningfully reduced just because Yale previously provided some information to the Government in the course of a Title VI compliance review.  For both legal and practical reasons, Yale cannot simply reproduce for SFFA the same files it previously provided to the Government.  As this Court recognized in denying SFFA's request to intervene, because SFFA represents just a single applicant who was denied admission to Yale's 2020 entering class, *see* Compl. ¶ 6, the discovery to which SFFA will be entitled is not co-extensive with the information Yale has provided to the Government.  *See Yale Univ.*, 337 F.R.D. at 46.  SFFA also will likely demand different—and, in some respects, more extensive—discovery than the Government did because the Government was conducting only a pre-suit administrative compliance review.  By imposing a stay now, while the Supreme Court considers the pending petition for certiorari in the *Harvard* case, this Court could reduce—or even eliminate—the costs SFFA's discovery requests are likely to impose.

In short, the burdens of continuing to litigate this case while the *Harvard* litigation remains pending before the Supreme Court strongly support a stay in this case.

*Third*, a stay is in the interests of judicial economy and "the efficient use of judicial resources."  *Ganim*, 269 F. Supp. 2d at 8.  A stay would save the parties from briefing, and this Court from having to resolve, a motion to dismiss that may be superseded by a subsequent Supreme Court decision altering the legal standard.  *See Marshel*, 552 F.2d at 472 (directing district court to stay proceedings because a question "will, in all likelihood, turn upon the decision" in a pending

Supreme Court case); *In re Literary Works*, 2001 WL 204212, at *3 ("[i]t would be an inefficient use of time and resources of the court and the parties to proceed in light of a pending U.S. Supreme Court decision that all agree will significantly impact" the litigation).

A stay also may save this Court from unnecessarily addressing the parties' discovery disputes and other ancillary issues. *See supra* pp. 11-12; *Loftus*, 464 F. Supp. 3d at 527 ("the Supreme Court's decision could moot the need for [that] discovery"). For example, in SFFA's prior lawsuits, current students and prospective applicants have moved to intervene as defendants. Those motions raised contested issues as to whether the putative intervenors could intervene and the scope of their potential intervention. *Compare Students for Fair Admissions Inc. v. Univ. of N.C.*, 319 F.R.D. 490, 494, 497 (M.D.N.C. 2017) (granting a motion to intervene but limiting discovery), *with Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 308 F.R.D. 39, 53 (D. Mass.), *aff'd*, 807 F.3d 472 (1st Cir. 2015) (denying intervention but permitting proposed intervenors extensive participation as amici curiae). Depending on how the Supreme Court resolves the *Harvard* litigation, this Court may be able to avoid unnecessarily adjudicating motions to intervene filed by putative intervenors in this lawsuit. Considerations of judicial economy therefore counsel in favor of granting a stay in this case.

*Finally*, the interests of third parties and the public at large militate in favor of a stay in this case. *See Ganim*, 269 F. Supp. 2d at 8 (examining "the interests of other persons not parties to the civil litigation" and "the interests of the public"). Courts in this Circuit have recognized that an "orderly and efficient use of judicial resources" is in the public interest. *See Catskill Mtns. Chapter*, 630 F. Supp. 2d at 306. That is why they have regularly held that a stay is in the public interest when the Supreme Court's resolution of a pending case is likely to bear on the disposition of the case at issue. *See supra* pp. 5-7 (citing cases). Moreover, to the extent that third parties and

13

the wider public have an interest in the enforcement of Title VI, the United States' investigation into Yale's admissions process is ongoing and will vindicate the public's interest.  SFFA's private lawsuit, by contrast, is intended to vindicate the interest of just a single individual who "applied for and was denied admission to Yale's 2020 entering class."  Compl. ¶ 6.  That private interest does not justify proceeding with this litigation while the Supreme Court considers the *Harvard* case and decides whether it will modify the governing legal standard.

The bottom line:  The applicable criteria strongly support a stay of all proceedings in this case pending the Supreme Court's disposition of SFFA's petition for certiorari in the *Harvard* litigation.  The Court should therefore grant the motion and stay the case.

## **CONCLUSION**

For the foregoing reasons, this Court should stay all proceedings in this case pending the

Supreme Court's decision on SFFA's petition for certiorari in *Harvard*.  If the petition is denied,

Defendant should be permitted 30 days from that date to respond to Plaintiff's Complaint and to

confer with SFFA pursuant to Federal Rule of Civil Procedure 26(f).  If the petition is granted, the

case should remain stayed until the Supreme Court issues a decision.

Respectfully submitted,

/s/ Neal Kumar Katyal

Christopher F. Droney (ct00020)          Neal Kumar Katyal (phv10947)
Erick M. Sandler (ct25029)               Peter S. Spivack (phv10936)
Sara J. van Vliet (ct30690)              Toccara Nelson (phv20026)
DAY PITNEY LLP                           HOGAN LOVELLS US LLP
242 Trumbull Street                      555 Thirteenth Street, N.W.
Hartford, CT  06103                      Washington, DC 20004
Telephone: (860) 275-0100                Telephone: (202) 637-5600
Fax: (860) 967-0793                      Fax: (202) 637-5910
cdroney@daypitney.com                    neal.katyal@hoganlovells.com
emsandler@daypitney.com                  peter.spivack@hoganlovells.com
svanvliet@daypitney.com                  toccara.nelson@hoganlovells.com

Sundeep Iyer (phv10960)
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
Fax: (212) 918-3100
sundeep.iyer@hoganlovells.com

*Counsel for Defendant Yale University*

15

**CERTIFICATE OF SERVICE**

      This is to certify that on this 7th day of May, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system. Parties may access this filing through the court's CM/ECF system.


Date: May 7, 2021                    <u>/s/ Neal Kumar Katyal</u>
                                     Neal Kumar Katyal